FREDERICKA HOMBERG WICKER, Judge.
 

 12In this suit for wrongful eviction from commercially leased property, plaintiff/appellant White Haute LLC appeals from a default judgment rendered in its favor against defendant/appellee Woodrow Wilson Mayo. The trial judge granted White Haute access to the premises to retrieve its property. She awarded White Haute $2500 for the cost of roof repairs, the amount of $2300 for the rent paid during the time that White Haute was denied access to the leased premises, $3600 in attorney’s fees, and court costs. In essence, White Haute claims that the trial court erred by failing to award damages for start-up expenses and lost profits. White Haute also claims that it is entitled to a new trial based on newly-discovered evidence, relying on exhibits attached to its brief that were not introduced into the record. On the other hand, Mr. Mayo, in his brief, asks this court to modify the awards of attorney’s fees and roof repairs on the basis that there was insufficient |sevidence to support them. Mr. Mayo, however, has neither answered nor appealed the judgment. An appellate court cannot alter a judgment in favor of the party who does not appeal nor answer an appeal.
 
 Jordan v. Travelers Ins. Co.,
 
 257 La. 995, 245 So.2d 151, 153, n. 1 (La.1971).
 
 See:
 
 La.C.C.P. art. 2082 (appeal) and La.C.C.P. art. 2133(A) (answer). In order for the appellate court to modify a judgment, the party asking for the modification must file either a motion for appeal or a written answer to the appeal.
 
 Robertson v. Frank’s Super Value Foods, Inc.,
 
 08-592, p. 5, n. 2 (La.App. 5 Cir. 1/13/09), 7 So.3d 669, 672, n. 2 (Citation omitted). Thus, Mr. Mayo’s request for modification has not been properly raised before the Court. Regarding White Haute’s specifications of error, we find these lack merit and we affirm the judgment.
 

 
 *947
 

 Factual and Procedural History
 

 White Haute filed a petition alleging that on March 5, 2008, it entered into a commercial lease with Mr. Mayo for the purpose of operating a sports bar at the premises located in Marrero, Louisiana. White Haute further alleged the following: (1) It spent in excess of $36,000 on improvements on the premises. (2) The roof leaked delaying White Haute’s possession and opening of the business for 60 days. (3) White Haute made timely payments to the landlord until Hurricane Gustav but because of the loss of electricity and water leaks from the roof White Haute was delayed in making payment for the August 2008 rent. (4) Mr. Mayo demanded that White Haute pay rent on September 18, 2008.(5) White Haute made payment by cashier’s check on October 9, 2008.(6) Without cause and due process, Mr. Mayo locked White Haute out of the premises and caused the electricity to be turned off. (7) Mr. Mayo failed to grant a right to cure within 30 days as provided by paragraph 14 of the lease. (8) Mr. Mayo has refused to allow White Haute access to the premises to retrieve its property. (9) As a direct | ¿consequence of Mr. Mayo’s wrong action, White Haute has incurred damages to its property in the amount of $36,000. (10) White Haute has lost income and future profits of $150,000. (11) White Haute has general damages in the amount of $100,000. (12) White Haute is entitled to attorney’s fees and court costs under paragraph 18 of the commercial lease. White Haute prayed for damages in the amount of $286,000, access to the premises to retrieve its possessions, attorney’s fees, and court costs. On July 14, 2009, the trial judge granted White Haute’s motion for preliminary default. On July 22, 2009, after no answer or other opposition had been filed, White Haute moved for confirmation of the preliminary default. It submitted the affidavit of Ms. Jeanette Rene Jeandron. White Haute stated that it would submit proof of its demand in open court.
 

 At the confirmation hearing on July 28, 2009, Mr. Mayo did not appear nor was he represented by counsel. White Haute’s counsel and Ms. Jeanette Rene Jeandron appeared.
 

 Ms. Jeandron, the founder and sole member of White Haute, testified that White Haute had previously operated a bar and restaurant in the French Quarter. Ms. Jeandron stated that she was a successful 30-year veteran of the bar and music club business. She testified that she was familiar with the area in which Mr. Mayo’s building was situated and she intended to lease the building in order to open a nightclub.
 

 The commercial lease was introduced into evidence. Ms. Jeandron identified the lease as the lease that she signed on behalf of the company. She also identified Mr. Mayo’s daughter’s signature as the party who signed on behalf of Mr. Mayo.
 

 According to the lease, there was an original term of March 5, 2008 to May 1, 2010. The rent was $500 for March 5, 2008 until May 1, 2008 and then $1500 Rper month. It provided for an option to renew for an additional 12 months provided there was no default, for a rental amount to be determined. Mr. Mayo required a total of $3000 by May 1, 2008. The lease stated that White Haute was to use the premises for a sports bar and nightclub. Mr. Mayo was responsible for roof repairs. An estimated amount for utilities was to be paid monthly by White Haute. In the event of a suit, reasonable attorney’s fees were provided.
 

 Ms. Jeandron testified that she thought that she gave Mr. Mayo a $3000 deposit. She said that she thought she paid seven months’ rent. A month after signing the
 
 *948
 
 commercial lease, she leased the upstairs apartment from Mr. Mayo.
 

 Ms. Jeandron stated that she obtained the necessary government permits to operate the business. She did not, however, recall the fees for the permits. Ms. Jean-dron identified various permits that were introduced into evidence. The sales/use tax registration and occupational license tax registration states that the business was started on June 1, 2008. Ms. Jean-dron testified that she thought she officially opened the bar in June or July after she received the license.
 

 However, she stated that the leaking roof delayed the opening for at least two months. She asked Mr. Mayo to make the repairs but he refused. So, she tried to fix the roof. She identified a contractor’s invoice that was introduced into evidence. The invoice references the subject premises and provides a detailed estimate of the cost of roof repair that totaled $2500. Ms. Jeandron testified that she spent around $1800 or $2000 on roof repairs.
 

 Also, Ms. Jeandron testified that it was necessary for her to close the bar during Hurricane Gustav because there was a mandatory evacuation in the area and lack of power. She thought she did not return for about two weeks. When she returned, she spoke to Mr. Mayo. He refused her access to the bar and changed the locks. Mr. Mayo told her that she owed him $6000. She thought that they agreed |fithat she would pay him $2300. She told Mr. Mayo that the payment was based on her receipt of a deposit from Entergy. She received the deposit shortly after she returned to the area. However, Mr. Mayo demanded more money.
 

 Ms. Jeandron testified that she paid Mr. Mayo $2375 as reflected on a cashier’s check dated October 6, 2008 and introduced into evidence. As far as she knew, Mr. Mayo negotiated the check. But, Mr. Mayo did not give her access to the premises. She made several calls to him to ask him if she could remove her belongings. When he refused, she retained a lawyer who wrote to Mr. Mayo. Mr. Mayo responded that he was not going to allow her access until he received an additional amount. She thought the additional amount was $4000. She did not know why Mr. Mayo thought she owed him that amount. Since that time she has not been permitted in the bar or in the apartment to remove her items.
 

 She testified that it was necessary for her to retain counsel in this case. She retained counsel on a one-third contingency fee basis.
 

 Ms. Jeandron identified an exhibit that was introduced into evidence as a list of the items that she could recall were in the bar and the apartment that belonged to her and the company. She described the bar’s items as equipment that she used to operate the nightclub. She personally prepared the list. She sought access to the premises so she could remove these items.
 

 She was asked whether based on her experience in operating a bar in the French Quarter and her market research, what type of profit she expected to earn from the bar for the first year. She replied that on a Friday night in the French Quarter they would average about $5000, but that was a much smaller venue. Her “guess” was that at the new location she would have earned at least that and at least $10,000 on the weekend. Her “guess” would have been $10,000-$20,000 on a weekend.
 

 |7Ms. Jeandron testified that the bar was approximately 6000 square feet. • She stated that she thought she spent about $30,000 in renovations in order to open and operate the bar.
 

 
 *949
 
 The trial judge stated that she was going to grant partial relief immediately whereby White Haute could enter the premises and make an inventory and remove the items. However, she stated that she would take the amount of damages under advisement.
 

 On August 12, 2009, the trial judge rendered a judgment in which she denied White Haute’s claims for additional alleged start-up expenses and/or lost profits. The trial judge reasoned that self-serving testimony was insufficient to support such claims. The trial judge concluded that White Haute failed to present corroborating evidence sufficient to establish a
 
 prima facie
 
 case of damages for start-up expenses and lost profits.
 

 On August 24, 2009, White Haute filed a timely motion for new trial asserting that the judgment appeared clearly contrary to the law and the evidence and that there was good ground as well as discretionary authority for a new trial. The trial judge denied the motion on August 26, 2009.
 

 On September 18, 2009, White Haute moved for a devolutive appeal of the August 12, 2009 judgment and the denial of its motion for new trial dated August 26, 2009. On September 21, 2009, the trial court granted the devolutive appeal.
 

 Four days after the appeal was granted, White Haute filed a motion for a writ of possession asking the clerk to issue such a writ directing the Sheriff to seize and deliver to White Haute its movable property under the judgment that was issued on August 12, 2009. On September 25, 2009, the clerk issued a writ of possession.
 

 [sNew Trial
 

 White Haute filed a motion to appeal the confirmation of default judgment and the denial of its motion for new trial. The motion for new trial was based on the allegation that the judgment was contrary to the law and evidence.
 
 See:
 
 La.C.C.P. art. 1972(1). In its motion for new trial, White Haute argued below that the trial court erred in failing to award start-up expenses and lost profits. On appeal, White Haute specifies these errors as to the denial of the motion and the default judgment.
 

 The denial of a motion for new trial is an interlocutory and non-appealable judgment. By 2005 La. Acts No. 205, effective January 1, 2006, La.C.C.P. art. 2083 was amended to remove the provision that interlocutory judgments that “may cause irreparable harm” are appealable. Pursuant to La.C.C.P. art. 2083(C) an interlocutory judgment is now appealable only when expressly provided by law. White Haute, however, is obviously appealing the merits of the default judgment, which is an appealable judgment. In this respect, White Haute specifies — as in its specification of error regarding the denial of the new trial — that the trial court erred in failing to award start-up costs and lost profits. Thus, as discussed below, we address the specifications challenging the appealable default judgment.
 
 Accord: Smith v. Hartford Acc. & Indem. Co.,
 
 254 La. 341, 223 So.2d 826, 827-29 (La.1969);
 
 Fruehauf Trailer Co. v. Baillio,
 
 252 La. 181, 210 So.2d 312, 315 (La.1968);
 
 Roger v. Roger,
 
 99-765, pp. 3-4 (La.App. 5 Cir. 1/12/00), 751 So.2d 354, 356,
 
 writ denied,
 
 00-0442 (La.3/31/00), 759 So.2d 73.
 

 White Haute also specifies as error its entitlement to a new trial based on alleged newly-discovered evidence. These arguments, however, are presented for the first time on appeal.
 

 19At the conclusion of trial on July 28, 2009, the trial judge stated that she would immediately issue a partial judgment allowing White Haute to enter the premises and to make an inventory but she would take the damages under advisement. She asked White Haute’s counsel to prepare the judgment and counsel said that he
 
 *950
 
 would do so “as quickly as possible.” No partial judgment to that effect was signed. Instead, the trial judge rendered a default judgment on August 12, 2009, which included a judgment allowing White Haute to have access to the premises. The appeal in this case was filed on September 18, 2009 and granted on September 21, 2009. It was not until September 25, 2009, after the appeal was granted, that White Haute filed a motion for a writ of possession asking the clerk to issue such a writ directing the Sheriff to seize and deliver to White Haute its movable property under the judgment that was issued on August 12, 2009. On September 25, 2009, the clerk issued a writ of possession. White Haute now argues for the first time on appeal that upon entering the premises, it discovered that White Haute’s property was missing. White Haute asserts that it is entitled to a new trial in order to establish its claim for damages against Mr. Mayo. White Haute relies on La.C.C.P. art. 1972(2), which provides that a new trial “shall be granted, upon contradictory motion of any party [w]hen the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.”
 

 White Haute has attached what purports to be a December 7, 2009 complaint with the Sheriffs office regarding the alleged missing property. This document post-dates the appeal and therefore could not be part of the appellate record. An appellate court must render its judgment upon the record on appeal. La. C.C.P. art. 2164;
 
 Black v. Anderson,
 
 06-891, p. 6 (La.App. 5 Cir. 3/13/07), 956 So.2d 20, 23,
 
 writ denied,
 
 07-0794 (La.6/1/07), 957 So.2d 180 (Citation omitted). An appellate 110court cannot review evidence that is not in the record on appeal and cannot receive new evidence.
 
 Hover v. Farber,
 
 05-613, p. 4 (La.App. 5 Cir. 1/31/06), 922 So.2d 637, 638. (Citation omitted).
 
 Accord: Younce v. Pacific Gulf Marine, Inc.,
 
 07-421, p. 25 (La.App. 5 Cir. 1/22/08), 977 So.2d 117, 134-35,
 
 writ denied,
 
 08-0416 (La.4/18/08), 978 So.2d 352. Thus, we limit our review to evidence in the record before us. Therefore, we decline to address this specification of error.
 
 [1]
 

 Default Judgment
 

 A judgment of default must be confirmed by proof of the demand sufficient to establish a
 
 prima facie
 
 case. La. C.C.P. art. 1702(A). When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a
 
 prima facie
 
 case shall be admissible, self-authenticating, and sufficient proof of such demand. La.C.C.P. art. 1702(B)(1). The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
 
 Id.
 
 When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a
 
 prima facie
 
 case, shall be admissible, self-authenticating, and sufficient proof of such demand. La.C.C.P. art. 1702(B)(2). The court may, under the circumstances of the ease, require additional evidence in the form of
 
 *951
 
 oral testimony before entering judgment.
 
 Id.
 

 White Haute argues that the trial judge used the wrong standard of proof by requiring corroborating evidence. White Haute asserts that it satisfied its burden of proving a
 
 prima facie
 
 case through Ms. Jeandron’s affidavit and her sworn hearing Intestimony that White Haute lost $150,000 in profits for the two-year period as well as its start-up expenses. We note that although White Haute filed Ms. Jean-dron’s affidavit in the record in support of its motion to confirm the default, that affidavit was not formally introduced into evidence at the confirmation hearing. Ms. Jeandron’s testimony, however, substantially conformed to the attestations in her affidavit.
 
 [2]
 
 In any event, we find no manifest error in the trial judge’s denial of lost profits and start-up expenses.
 

 In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment.
 
 Arias v. Stolthaven New Orleans, L.L.C.,
 
 08-1111, p. 5 (La.5/5/09), 9 So.3d 815, 818 (Citation omitted). This determination is a factual one governed by the manifest error standard of review.
 
 Id.
 

 Confirmation of a default judgment is similar to a trial and requires, with admissible evidence, “proof of the demand sufficient to establish a
 
 prima facie
 
 case.” La.C.C.P. art. 1702(A);
 
 Arias, supra,
 
 08-1111 at 7, 9 So.3d at 820 (Citations partially omitted). The elements of a
 
 prima facie
 
 case are established with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant.
 
 Id.
 
 In other words, the plaintiff must present competent evidence that convinces the court that it is probable that it would prevail at trial on the merits.
 
 Id.
 
 A plaintiff seeking to confirm a default must prove both the existence and the validity of his claim. A default judgment cannot be different in kind from what is demanded in the petition and the amount of damages must be proven to be properly due.
 
 Id.
 
 (Citation and footnote omitted).
 

 _|j2White Haute relies on La.C.C.P. art. 1702(B)(1), which provides that when a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a
 
 prima facie
 
 case shall be admissible, self-authenticating, and sufficient proof of such demand. However, White Haute must establish a
 
 prima facie
 
 case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant.
 
 Arias, supra,
 
 08-1111 at 7, 9 So.3d at 820 (Citations partially omitted). White Haute is required to present competent evidence that convinces the court that it is probable that it would prevail at trial on the merits.
 
 Id. See: Ledet v. Moe,
 
 03-745 (La.App. 5 Cir. 12/9/03), 864 So.2d 643, 645, where this Court reversed a default judgment on the basis that the plaintiffs failed to submit competent evidence to prove their damages.
 

 White Haute relies on
 
 Pelleteri v. Caspian Group Inc.,
 
 02-2141 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230. That case is factually distinguishable. White Haute argues that because Ms. Jeandron testified that she had 30 years experience, her testimony
 
 *952
 
 was sufficient to prove damages for start-up expenses and lost profits. In
 
 Pelleteri,
 
 there was testimony regarding the specific type of work that was performed in renovating the property. The experts did not offer speculative testimony. Rather, they based their expert opinions on such things as a budget prepared by the shareholders of the company, profits at a comparable restaurant, and data from the National Restaurant Association. The court reviewed the expert testimony. Among other things, the court found that the tenant’s expert’s comparison with another restaurant was inappropriate because that restaurant served a different type of clientele. The court, however, reviewed the entire testimony and found, under the facts of that case, the tenant otherwise proved its losses. For example, there was testimony that the restaurant was closed prior to 11sJazz Fest, a particularly lucrative period for restaurants and bars in New Orleans. 02-2141 at 4, 6, 16-17, 851 So.2d at 1233, 1234, 1239-41.
 

 In this case, Ms. Jeandron estimated that she spent approximately $30,000 in renovating the bar. She never described the specific renovations that were undertaken and the cost for each item, nor did she provide receipts or other documentation showing these expenditures. On appeal, White Haute states that the receipts were in a safe at the premises and unavailable. White Haute, however, did not elicit any testimony to that effect at the hearing. No evidence of any attempt to recover the allegedly missing records was introduced. No one was deposed or subpoenaed to testify as to the whereabouts of the records or to substantiate White Haute’s claim of unavailability. But more importantly, Ms. Jeandron did not provide any details and estimated amounts as to the specific renovations that were necessary to open the bar. We conclude that White Haute failed to support its claim for start-up expenses through competent evidence. Therefore, the trial judge was not manifestly erroneous in denying the claim for start-up expenses.
 

 With regard to the claim for lost profits, Ms. Jeandron testified that she has been successfully involved in the bar and music club business for more than 30 years. At the former location in the French Quarter, she earned approximately $5000 in profits on a Friday night. At the subject premises, she anticipated earning a profit of $10,000-$20,000 on a weekend.
 

 In cases where direct evidence is not available to establish the exact extent of loss caused by a breach of contract, resort to customary or foreseeable profit as a measure of damage is proper.
 
 Wasco, Inc. v. Economic Development Unit, Inc.,
 
 461 So.2d 1055, 1057 (La.App. 4 Cir.1984),
 
 unit denied,
 
 465 So.2d 738 (La.1985) (Citations omitted). Ms. Jeandron did not produce any receipts or other documentation to show the amount of profit she customarily earned at the former [14bar. Further, she was vague when explaining why she anticipated making a similar or greater profit at the subject premises. She testified that she was familiar with the new area. Customers from that area came on the weekends to her bar in the French Quarter to listen to a certain type of music. She said that the French Quarter bar had a smaller “venue.”
 

 White Haute’s claim for lost profits arises out of an alleged breach of the lease contract when Mr. Mayo locked her out of the premises and when he refused to repair the leaking roof. According to the lease, White Haute was provided use of the premises for the purpose of operating a bar. La.C.C. art. 1995 provides that damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. Thus, loss of profit is an item of damages recoverable for breach of contract.
 

 
 *953
 
 When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La.C.C. art. 1999. However, lost profits, as an element of damages for the breach of a contract, may be recovered where they are not speculative or uncertain in their nature, and are susceptible of proof with reasonable certainty.
 
 George W. Garig Transfer v. Harris,
 
 226 La. 117, 75 So.2d 28, 83 (La.1954) (Footnote omitted). Although the absence of independent corroborative evidence is not always fatal, the lack of even a minimal degree of detail and specificity in the plaintiffs testimony, regarding the issue of lost profits, would preclude recovery of this item of damages. Wasco,
 
 Inc. v. Economic Development Unit, Inc.,
 
 461 So.2d 1055, 1056 (La.App. 4 Cir.1984),
 
 writ denied,
 
 465 So.2d 738 (La.1985) (Citation omitted). In this case, Ms. Jeandron speculated that the new location would have been profitable, but there is no evidence to support her optimistic theoretical assertion. Because lost profits must be proved with reasonable certainty and may 11finot be the object of theoretical speculation, we find that White Haute did not carry its burden of proving this element of damages. Thus, the trial judge was not manifestly erroneous in denying this claim.
 

 Conclusion
 

 For the foregoing reasons, the judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Furthermore, the motion is untimely. La. C.C.P. art. 1974 provides: “The delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.” In this case, the judgment was mailed on August 14, 2009. Therefore, on December 22, 2009, when appellant filed its brief raising this issue, the delay had long since run.
 

 [2]
 

 . At the hearing, Ms. Jeandron provided lost profit and start-up estimates that were consistent with the amounts stated in her affidavit. At the hearing, Ms. Jeandron estimated that she lost profit in the amount of $10,000 to $20,000 per weekend. In her affidavit, she attested that she would have earned a profit of $150,000 for the term of the lease. At the hearing, Ms. Jeandron testified that she thought she spent about $30,000 in renovations in order to open and operate the bar. In her affidavit, she attested that she invested $36,000 in the start-up expenses of the bar.