**Luz E. UNZUETA, as Special Administrator of the Estate of Alan Unzueta; and James S. Phillips, Jr., as Limited Conservator for Alan Jelinek, a minor child, Plaintiffs,**

v.

**Dennis STEELE; Michael H. Tudor; Philip A. Schreiber; and Bethany Smith, Defendants.**

No. 99–4162–RDR.

United States District Court, D. Kansas.

Oct. 29, 2003.

Lynn M. Retz, Enid, OK, Ralph Allen Corzine, Kansas Advocacy & Protective Services, Inc., Robert D. Ochs, Carpenter & Beavers Law Office, L.L.C., Scott A. Letts, Kansas Advocacy & Protective Services, Inc., Sherry C. Diel, Topeka, KS, for Plaintiffs.

Bruce A. Roby, Waggener, Arterburn & Standiferd, Carl W. Ossmann, David R. Cooper, Donald Patterson, Fisher, Patterson, Sayler & Smith–Topeka, Topeka, KS, Donald A. Frigon, Frigon Law Firm, Dodge City, KS, for Defendants.

Roberta S. McKenna, Topeka, KS, Brenda W. Hagerman, Larned, KS, for Movant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon: plaintiff's motion to substitute; defendants' Steele, Schreiber and Tudor's motions for summary judgment; and plaintiffs' motion for partial summary judgment.

This case involves the death of Alan Unzueta, a 16–year–old boy who was involuntarily committed for treatment at the Larned State Hospital ("LSH"). Plaintiffs raise claims under 42 U.S.C. § 1983 and state law. The first issue the court shall discuss relates to whether the proper plaintiffs are bringing the claims in this case and whether substitution should be permitted.

## I. PLAINTIFF'S MOTION TO SUBSTITUTE

This case was originally brought by Luz Unzueta, Alan Unzueta's mother, as special administrator of the Estate of Alan Unzueta. Alan's sister, Felicitas Unzueta, was also named as a plantiff, along with his son, Alan Jelinek. Felicitas Unzueta has been voluntarily dismissed as a plaintiff. Luz Unzueta is bringing a survival action. Jelinek is bringing a wrongful death action.

The court has already ruled, in an order addressing a motion to dismiss or for partial summary judgment, that the order appointing Luz Unzueta as special administrator did not authorize her to bring the instant lawsuit because its language expressly permitted the special administrator to bring a legal action against LSH, not the individual defendants in this case. The court has also ruled previously that it was necessary for a state probate court to find that Alan Jelinek was Alan Unzueta's heir-at-law before he could proceed with a wrongful death claim. The court's order, dated November 4, 2002, granted plaintiffs 60 days to file the appropriate pleadings establishing the real party in interest in this case.

On December 12, 2002, Luz Unzueta, who as mentioned before originally brought this case as the Special Administrator of the Estate of Alan Unzueta, filed a motion for substitution asking that she be substituted as plaintiff in the capacity of Administrator of the Simplified Estate of Alan Unzueta.

This motion indicates that on September 13, 2001, the Kansas State District Court for Finney County closed the "Special Administration" and issued "Letters of Administration under the Kansas Simplified Estates Act" to Luz Unzueta, as administrator, with "full power and authority as provided by law." Defendants' objection to the motion is largely based on the delay in asking for substitution. There is no claim that if substitution is allowed there will be prejudice to defendants' ability to defend against the contentions made against them.

■ While the timing of the motion for substitution may be legitimately criticized, the court does not believe the motion should be denied on that basis. The purpose of FED.R.CIV.P. 17 does not appear threatened under the facts of this case.

*See Scheufler v. General Host Corp.*, 126 F.3d 1261, 1270 (10th Cir.1997) (function of Rule 17(a) is to protect defendant against a subsequent action by the party actually entitled to recover and to insure that judgment will have proper res judicata effect).

As in Scheufler, where substitution was allowed and affirmed by the Tenth Circuit, in this case the failure to move sooner for substitution appears to be a result of a mistake as to the legal authority of a document, i.e., the authority extended by the order of special administration, as well as the delay in this court's ruling upon defendants' motion to dismiss. Since there is no apparent prejudice to defendants, the court believes the motion for substitution should be granted.

Defendants have argued that issues of standing and jurisdiction are at stake. We reject these arguments. The Tenth Circuit distinguishes between real party in interest questions and standing. *See Federal Deposit Insurance Corp. v. Bachman*, 894 F.2d 1233, 1235 (10th Cir.1990). This is not a question of jurisdiction or standing. Rather, it is a matter of deciding whether substitution is in the interests of justice. Substitution should be permitted "to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." FED.R.CIV.P. 17(a) Advisory Committee Notes, 1966 Amendment. Counsel for plaintiffs made the determination that authority to sue LSH extended to suing officials and employees of LSH. While the court decided this was a mistake, we believe it was an understandable mistake. Because the delay in correcting this mistake has not caused prejudice to defendants and substitution is in line with the purposes of Rule 17, we shall grant the motion to substitute.

## II. MOTIONS FOR SUMMARY JUDGMENT

We review the legal issues raised by defendants' motions for summary judgment considering all of the evidence in a light most favorable to the nonmoving party. *Schwartz v. Brotherhood of Maintenance of Way Employes*, 264 F.3d 1181, 1183 (10th Cir.2001). Summary judgment is warranted when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Oliver v. Woods*, 209 F.3d 1179, 1184 (10th Cir.2000).

Because qualified immunity is one of the issues raised in defendants' motions for summary judgment, it should be noted that the Tenth Circuit has set forth a different approach for summary judgment on qualified immunity issues.

When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to show that 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory right was clearly established when the alleged violation occurred. *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir.2002). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If so, we must subsequently ask "whether the right was clearly established." *Id.* If the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir.2001). If the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that "no genuine issues of material fact" exist and

that the defendant "is entitled to judgment as a matter of law." *Id.* In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. *Farmer*, 288 F.3d at 1259. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be "properly denied." *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir. 1991) ...

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir.2002).

The following facts are either uncontroverted or shall be considered true for the purposes of deciding the summary judgment motions. Alan Unzueta was admitted to LSH pursuant to a court order on September 2, 1998. He was 6 feet 3 inches tall and weighed 245 pounds. He was diagnosed with intermittent explosive disorder and major depression with personality disorder not otherwise specified.

On the evening of October 27, 1998 there was a Halloween party at LSH. Before Alan entered the auditorium/gymnasium at LSH where the party was being held, he was scowling and indicated to Beth Smith, an activity therapist, that the staff was "pissing me off."

The auditorium was decorated for the party. There was loud music and the lights were dimmed. Some of the staff and patients were dressed or wore makeup for Halloween.

Alan sat by himself in the auditorium for a short time, then got up to use the drinking fountain and returned to a chair. As he walked past Beth Smith, she inquired if there was anything the staff could do for him. Alan did not respond. After Smith discussed her concerns about Alan with Joel Keith, an LSH employee, Keith approached Alan and sat down with one chair

vacant between Alan and himself. Alan suddenly stood up and hit Keith in the face very hard. Smith observed the blow and immediately blew her whistle and yelled for assistance. Several staff members responded to the call for help. Carolyn Hunt, a mental health aide, approached Alan and sat him down in a chair. Then she turned to assist Keith. Defendant Mike Tudor, an activity therapist, arrived and grabbed Alan's left arm. Defendant Phil Schreiber, who was also an activity therapist, came and grabbed Alan's right arm. Both arms were placed behind Alan's back while he was seated in the chair. Then, defendant Dennis Steele, a mental health trainee, approached and helped restrain Alan.

Alan rose from his chair and was taken down to the floor by the men holding him. He was not slammed to the floor or thrown to the floor. Either before or after he was taken down, Smith ran to the foyer and asked other staff to call for security. Security staff received the call to respond at 7:08 p.m. and arrived one minute later.

Steele had his left arm underneath Alan's chest as Alan went down face first on the floor. Alan swung his head toward Steele's face, butting Steele with the back of his head. When Donald Keeslar, a security officer, arrived, Steele was lying on the floor in a prone position at Alan's head area, and Alan's face was turned into Steele's chest and Steele had his arm up around the head area. Vanessa Paige, a mental health aide, arrived before Alan was taken to the floor. She placed her hand on Alan's back after he was taken down.

Tudor and Schreiber held Alan on his stomach with his arms behind his back until security arrived. Schreiber was laying on the floor with his body parallel to Alan's. At one point, Schreiber placed his leg over Alan's right leg to prevent Alan

from kicking. Beth Smith ultimately took over controlling Alan's right leg, holding his right ankle and calf area below the knee. Schreiber returned to lying parallel to Alan.

Security officers placed handcuffs on Alan. Tudor and Schreiber had been holding Alan on the floor for three to four minutes. Steele asked Schreiber to help him get Steele's arm out from underneath Alan.

Alan was on the floor for less than six minutes when Beth Smith called first for a medical emergency and then for a code blue at 7:16 p.m. The code blue was called because the people attending to Alan noticed his hands, lips and eyelids turning blue. It appeared that Alan was not breathing. He had only a weak pulse. Alan was turned over and he gasped for air. Steele gave Alan a couple of rescue breaths and Alan started breathing on his own. Vanessa Paige ran to a building across the street to retrieve an oxygen bottle. Other emergency medical equipment was also summoned.

Lee Flamik, a program director at LSH, did not see anyone place Alan in a choke hold. Nor did he see anyone place weight on Alan's back during the time he was present in the auditorium. However, he left the area of the auditorium intermittently during the incident. Vanessa Paige, Donald Keeslar, Mike Tudor, Phillip Schreiber, Bethany Smith and Carolyn Hunt have all stated that they did not see a choke hold being administered to Alan Unzueta. Robert Janousek, an activity therapist who assisted in holding Alan's left leg, did not testify in his deposition that he saw a choke hold.

However, after the incident, Dennis Steele demonstrated the "hold" he placed on Alan Unzueta to Michael Williams, an investigative agent for the State of Kansas Bureau of Investigation. Steele placed his arms around Williams' neck while he and Williams were standing up—not in a prone position. Williams characterized the hold as a "choke hold." Williams testified that Steele agreed with that characterization, although Steele also stated that he was just trying to keep a hold on Unzueta and was not trying to intentionally choke him.

Dennis Steele also stated in an unsworn interview that he felt extreme weight on him. Exhibit G, p. 241. He could not see the cause of the weight, but he assumed that Tudor and Schreiber had their weight on Unzueta's back. In his deposition Steele stated that he was not sure that Tudor and Schreiber had their body weight on Unzueta; that he was assuming there were people on top of him and that he attributed some of the weight fluctuation to Unzueta's kicking and jerking. Deposition at pp. 43–44, 59–60, 120–21. Vanessa Paige did not see anyone placing weight on Unzueta's back. Deposition at p. 60. Neither did Carolyn Hunt, Lee Flamik, or Donald Keeslar. See Affidavits, Doc. No. 460.

The Larned Ambulance Service received a call to dispatch an ambulance to LSH at 7:16 p.m. The ambulance arrived at 7:25 p.m. Alan was taken first to a hospital in Larned, Kansas and later to a Great Bend, Kansas hospital. Alan died at 2:05 a.m. on October 28, 1998 at the Central Kansas Medical Center in Great Bend.

There is a "battle of experts" in this case in regards to the cause of death. Dr. Corrie May has stated the opinion that Alan Unzueta died from positional asphyxiation. Dr. Kris Sperry has testified that positional asphyxiation or neck compression did not cause the death. In his opinion, an enlarged heart, the use of thorazine, and the altercation itself produced a heart arrhythmia which led to aspiration pneumonia.

We shall assume for the purposes of summary judgment that asphyxiation is

the cause of death in this case. We shall also assume that defendant Steele held Alan in a manner which cut the flow of oxygen to his lungs or brain. We shall further assume that defendants Tudor and Schreiber placed some measure of weight or force on Alan's back while he was on the floor, but much less than their full body weight.

**A. Excessive force under § 1983 and qualified immunity**

Plaintiffs bring an excessive force claim under 42 U.S.C. § 1983 against defendants Steele, Tudor and Schreiber. Defendants have argued qualified immunity.

■ "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Roska v. Peterson,* 328 F.3d 1230, 1248 (10th Cir.2003).

■ The contours of the right must be sufficiently clear that an objectively reasonable officer would understand that what he or she is doing violates that right. *See Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). So although even novel fact situations may be encompassed in clearly established law, *see Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), that is only so when the state of the law is sufficiently clear to give the officers fair warning that their actions would be unconstitutional. *Id.*

*Lucero v. City of Albuquerque,* 77 Fed. Appx. 470, 2003 WL 22301239 (10th Cir. 2003).

■ An excessive force claim should be analyzed by determining whether the defendants' actions were objectively reasonable in light of the surrounding facts and circumstances. *Allen v. Muskogee,* 119 F.3d 837, 840 (10th Cir.1997) citing *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The inquiry should cover actions leading up to and at the moment of the use of force. *Id.* The use of force should be judged from the perspective of a reasonable officer on the scene who is often forced to make a split-second judgment regarding the amount of force which is necessary. *Id.,* quoting *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865. Factors to consider include: the severity of the action leading to the officers' response; the potential threat posed to the safety of the officers and others; and the resistance presented to the officers. *See Medina v. Cram,* 252 F.3d 1124, 1131 (10th Cir.2001).

**1. Defendants Tudor and Schreiber**

In this case, the court does not believe the facts examined in a light most favorable to plaintiffs demonstrate that defendants Tudor and Schreiber acted in an objectively unreasonable manner. Alan Unzueta, a large person, had struck a staff member in the face very hard. Tudor and Schreiber reacted to a call for help from other staff members. Because a party was taking place in an auditorium/gymnasium, where the lights were low and there was loud music and many other LSH patients, it was reasonable to attempt to remove Alan from the auditorium for everyone's safety. Alan initially opposed defendants' actions. But, we assume for the purposes of the instant motions that the resistance was not greatly violent and that it diminished completely some time after he was placed down on the floor. When Tudor, Schreiber and Steele took Alan to the floor, Alan came down on defendant Steele's left arm. During this time, defendants did not strike Alan or attempt to hurt him. Almost as soon as handcuffs were applied, it was determined that Alan was seriously short of breath and required medical assistance. This was a few min-

utes after he was taken to the floor. At that point, actions were taken to revive and assist Alan. We assume that defendants Tudor and Schreiber were aware that pursuant to their training and LSH policy they should attempt to de-escalate potentially violent situations and that they should attempt to employ the least amount of force necessary to maintain control. We also assume that defendants were aware that Alan was under diminished capacity and most probably was using a medication such as thorazine.

■ In light of the circumstances, defendant Tudor and Schreiber's efforts to control Alan by exerting some weight or pressure on his arms, legs and back did not constitute excessive force. *See Wagner v. Bay City Texas*, 227 F.3d 316 (5th Cir.2000) (use of pepper spray, taking person to the pavement, handcuffing him, placing knee to the back while restraining neck with a baton, as well as having two officers on top of him is not unreasonable in response to violent opposition to officers); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir.1997) cert. denied, 522 U.S. 1116, 118 S.Ct. 1052, 140 L.Ed.2d 115 (1998) (no excessive force found when officers placed suspect in prone position with arms and legs restrained and put knee in suspect's back for about a minute to control him where suspect actively resisted arrest); *Gassner v. City of Garland*, 864 F.2d 394, 400 (5th Cir.1989) (choke hold, wrestling to the ground, and handcuffing in response to resistance to arrest for speeding and disorderly conduct is not excessive force); *Fernandez v. City of Cooper City*, 207 F.Supp.2d 1371, 1379–80 (S.D.Fla.2002) (use of pepper spray, taking person down to ground, placing knee in back and putting cuffs on hands and legs is not excessive force against a schizophrenic person resisting arrest); *Tofano v. Reidel*, 61 F.Supp.2d 289, 302 (D.N.J.1999) (restraint in a prone position by three officers on top

of an emotionally disturbed person who violently resisted arrest and handcuffing, is objectively reasonable); *Price v. County of San Diego*, 990 F.Supp. 1230, 1244 (S.D.Cal.1998) (hogtie restraint, pressure to torso, knee to back, foot against head, and placing mentally unstable person prone on hot asphalt was reasonable force in response to resistance toward officers when asked to exit truck); cf., *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir.2003) (excessive force employed by officers who placed a mentally disturbed person on the ground, handcuffed him and, while he was prone on the ground, had two officers pressing their weight against his neck and torso even though he was pleading for air and was no longer resisting arrest). In all of the cases cited above except the Gassner case, the person being restrained by the officers' actions died.

■ Even if the court determined that defendants Tudor and Schreiber's actions in this case could be found to be objectively unreasonable, Tudor and Schreiber are still entitled to qualified immunity because reasonable persons in their position could have believed that their conduct was lawful. *See Cruz v. City of Laramie*, 239 F.3d 1183, 1189–90 (10th Cir.2001) (finding qualified immunity for officers who hog-tied an arrestee with diminished capacity because in 1996 there was not a clearly established right to be free from a hog-tie restraint under the circumstances); *Tobias v. County of Putnam*, 191 F.Supp.2d 364 (S.D.N.Y.2002) (qualified immunity for defendants who placed a four-point restraint on a person who was fighting officers to resist arrest in 1999); *Tofano*, 61 F.Supp.2d at 304 (qualified immunity for restraining plaintiff in a prone position on the ground with three officers on top of plaintiff in 1995); *Guseman v. Martinez*, 1 F.Supp.2d 1240, 1257–59 (D.Kan.1998) (qualified immunity for officers who kept

mentally disturbed obese person in a prone position in cuffs and leg restraints over an extended period of time in 1995). The measure of force and restraint used by Tudor and Schreiber was significantly less in this case than that used in the above-cited cases where qualified immunity was found.

2. Dennis Steele

 The court believes that factual issues remain as to whether defendant Dennis Steele exerted excessive force during the incident in question in this case. There is a factual question as to whether defendant Steele used a choke hold or head lock that cut off oxygen to Alan and caused injury. There is also a fact question as to whether the alleged choke hold continued beyond the point that a reasonable person would know that Alan was not resisting efforts to control him. Under these circumstances, we believe there is a factual question as to whether excessive force in violation of a clearly established right was used in this case. *See Glazer v. City of Long Beach,* 210 F.Supp.2d 1131, 1137–38 (C.D.Cal.2000) (no qualified immunity for officer's use of choke hold on burglary suspect when there is a fact issue regarding suspect's level of resistance); *Owens v. City of Fort Lauderdale,* 174 F.Supp.2d 1282, 1292–93 (S.D.Fla.2001) (no qualified immunity when there is a fact issue regarding how long a choke hold was used on a mental patient); *Papp v. Snyder,* 81 F.Supp.2d 852, 856–57 (N.D.Ohio 2000) (no qualified immunity for use of choke hold while suspect is handcuffed and restrained).

Defendant Steele claims that there is inadequate evidence to support the conclusion that Alan died because of Steele's actions. Our review of the record persuades us that this is a question for a jury. There is evidence that defendant Steele placed Alan in some kind of hold that could have blocked the flow of oxygen to Alan's lungs or brain. Steele asserts that plaintiffs' expert, Dr. Corrie May, links Alan's death only to an "inappropriate expansion of the normal bellow mechanism of the lung" not caused by Steele's actions. The court has carefully read the deposition of this witness. We do not believe the language of the answer isolated by defense counsel can be read in context to exclude a causal contribution to Alan's death from the actions of defendant Steele. Defendant Steele asserts that Alan died from a cause other than what was discussed by Dr. May. As stated before, we believe this is a "battle of experts" matter which cannot be decided on summary judgment. Finally, defendant Steele argues that Dr. May's opinion should be inadmissible under a Daubert analysis. We believe defendant's attack goes more to the weight than to the admissibility of Dr. May's opinion. See *Tofano,* 61 F.Supp.2d at 295.

B. State law claims

1. Tudor and Schreiber

 The court shall grant summary judgment to defendants Tudor and Schreiber upon plaintiffs' state law claims. We believe Kansas courts would recognize that defendants Tudor and Schreiber had a privilege to exercise reasonable force to impose control over Alan. Cf., Restatement (Second) of Torts §§ 147 and 152 (privilege of persons in charge of children to use reasonable amount of force); Restatement (Second) of Torts §§ 63 and 76 (privilege to use force in defense of one's self and others). Defendants had a privilege to use reasonable force under the circumstances in this case. There is no triable issue as to whether the amount of force was so excessive or unreasonable as to support a claim of battery or wrongful death. Therefore, defendants Tudor and Schreiber are entitled to summary judgment.

## 2. Dennis Steele

For the same reasons discussed with regard to the § 1983 claim, the court believes factual issues exist which preclude granting summary judgment to defendant Steele upon plaintiff's state law claims. Defendant Steele has raised certain legal defenses which the court shall also deny.

 We disagree with defendant Steele that this case falls within the immunity clauses contained in the Kansas Tort Claims Act, K.S.A. 75–6104. We do not believe this case presents a claim "for injuries resulting from the use" of public property for recreational purposes. The injury allegedly resulted from the actions of LSH staff that had only a slim connection with the auditorium or the use of the auditorium for a recreational purpose. The alleged injury occurred while the auditorium was being used for a recreational purpose, but not because the auditorium was being used for a recreational purpose. Therefore, the recreational use immunity provision (K.S.A.75–6104(*o*)) does not apply. We also conclude that the discretionary function exception to liability under K.S.A. 75–6104(e) does not apply here. " 'Discretion' requires more than 'the mere exercise of some judgment,' because judgment is exercised in nearly all endeavors; instead, a discretionary function 'must involve some element of policy formulation.' " *Carl v. City of Overland Park*, 65 F.3d 866, 870 (10th Cir.1995) (refusing to apply exception to decision to engage in high-speed car pursuit and quoting, *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 819 P.2d 587, 600 (1991)). The remaining arguments regarding the application of exceptions to the Kansas Tort Claims Act found in K.S.A. 75–6104(c) and (i) are not dispositive of plaintiffs' claims. We agree that a state law claim for damages cannot be based on an alleged failure to abide by LSH policies (see K.S.A. 75–6104(c)), but those policies may be considered evidence of reasonableness if they are related to the actions and situation in question. The defense argument under K.S.A. 75–6104(i) fails because, even if qualified immunity under § 1983 was incorporated by this statutory section, we find that there are fact issues which preclude granting summary judgment to defendant Steele on qualified immunity grounds.

 Defendant argues that the battery claim does not survive death. The survival statute, K.S.A. 60–1801, provides that actions for "injury to the person" survive. We believe a claim for battery constitutes an action for "injury to the person." *See Hulbert v. City of Topeka*, 34 F. 510, 514 (C.C.D.Kan.1888) (J. Brewer stating in a hypothetical that a cause of action for assault and battery would survive under an earlier Kansas survival statute with the same language).

We also reject the argument that there is no evidence of conscious pain and suffering in this case. Our examination of the record persuades us that there is evidence upon which a reasonable jury could base a finding of conscious pain and suffering.

## III. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

Plaintiffs have filed a motion seeking partial summary judgment regarding the defendants' use of excessive force and pendant state law claims. As we have held in a prior order regarding different defendants and for the reasons discussed in this order, we believe there are factual issues which preclude this court from granting plaintiffs' motion for partial summary judgment. The motion shall be denied.

## IV. CONCLUSION

The motion to substitute shall be granted. Summary judgment shall be granted

to defendants Tudor and Schreiber. Summary judgment shall be denied to defendant Steele. Plaintiffs' motion for partial summary judgment shall be denied as to all defendants. Defendants' motions to strike (Doc. Nos. 411 and 430) are now moot by reason of this order.

**IT IS SO ORDERED.**