# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 14, 2022

Lyle W. Cayce
Clerk

No. 21-30205

KAREN ABRAUGH, *individually and on behalf of* M.A. *and as Administrator,* *on behalf of* RANDALL ABRAUGH ESTATE; KELSEY RICE ABRAUGH; REASHELLE MORROW, *on behalf of* M.A.,

*Plaintiffs—Appellants*,

*versus*

BILL ALTIMUS, *individually and in his official capacity*; JAMES COCHRAN, *individually and in his official capacity*; JULIAN C. WHITTINGTON, *individually and in his official capacity*; RODNEY BOYER, *individually and in his official capacity*; SUSAN C. TUCKER, *individually and in her official capacity*; CYNTHIA HOLLEY, *individually and in her official capacity*; ANITA FLYE, *individually and in her official capacity;* RUSSELL W. ROBERTS, *individually and in his official capacity*; JESSICA FARRINGTON, *individually and in her official capacity*; BRADLEY VASSAR, *individually and in his official capacity*; STATE OF LOUISIANA OFFICE OF RISK MANAGEMENT; JOHN DOE #1, *Correctional Employee*; JOHN DOE #2, *M.D.*; JOHN DOE #3, *Mental Health Professional*; LOUISIANA STATE UNIVERSITY AGRICULTURAL & MECHANICAL COLLEGE BOARD OF SUPERVISORS; POLICE JURY BOSSIER PARISH; PARISH OF BOSSIER,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:20-CV-252

Before WIENER, GRAVES, and HO, *Circuit Judges*.

JAMES C. HO, *Circuit Judge*:*

Some words have multiple meanings. The right meaning may vary dramatically depending on context. And determining which usage applies to a given situation can have significant consequences under our legal system.

A few examples will suffice to show how things can go awry if you get the usage wrong. "Sanction" can mean official approval—or official penalty. "Natural born" often refers to an attribute possessed at birth (as in "natural born citizen" or "natural born athlete")—but it could also refer to the method of one's delivery into the world. "Discrimination" might mean disfavoring one group of individuals over another—or it might just mean differentiating among people based on a group trait. *See also* Charles P. Pierce, *Goat vs. G.O.A.T.: The History Behind Sports's Antithetical Animal Analogy*, SPORTS ILLUSTRATED, July 23, 2018 (depending on context, "goat" can mean "an athlete who failed, garishly, hilariously, and at the worst possible time"—or the "greatest of all time").

Judges and lawyers are only human. At times we may be imprecise in our use of terminology. And that imprecision can lead to legal error. In particular, courts and judges are sometimes "less than meticulous" when it comes to the term "jurisdiction." That's what the Supreme Court observed in *Arbaugh v. Y&H Corporation*, 546 U.S. 500, 511 (2006)—not to be confused with the lead plaintiff here, Karen Abraugh.

It's also what happened here. In this case, the district court was "less than meticulous" about one particular aspect of jurisdiction—the concept of "standing." The following two principles, stated independently, are both legally correct as far as they go: (1) A plaintiff like Abraugh lacks "standing"

---

* Judges Wiener and Graves concur in all but Section II.C of this opinion.

No. 21-30205

to bring suits like this. (2) If a plaintiff lacks "standing," then the district court lacks subject matter jurisdiction to consider the plaintiff's claims.

But combining these statements here, as the district court did, creates legal error. That's because they involve different conceptions of standing.

The first statement concerns prudential standing, not Article III standing: Abraugh lacks prudential standing because Louisiana law does not authorize her to bring this particular cause of action. The second statement, by contrast, concerns Article III standing: If Abraugh lacks Article III standing, then the district court lacks subject matter jurisdiction over her claims.

In this case, Abraugh lacks prudential standing. But she has Article III standing. She has a constitutionally cognizable interest in the life of her son. And that determination does not turn on whether Louisiana law allows her to sue.

So the district court erred when it held that it lacked subject matter jurisdiction to consider any of Abraugh's amended complaints. Accordingly, we reverse and remand for further proceedings.

## I.

Karen Abraugh brought this suit over the wrongful death of her son Randall. Authorities booked Randall into the Bossier Maximum Security Facility as a pretrial detainee. He was both medicated and intoxicated at the time, and he had a history of mental health treatment. Though Randall was identified as "a detainee who should be followed for alcohol withdrawal syndrome and possible delirium tremens," prison officials allegedly placed him in a cell without an operable source of water and failed to monitor him or provide any medication or liquids. The next day, officials found him hanging from his bedsheets. After emergency medical services personnel restored his

cardiac function, he was transported to the hospital for treatment, but he eventually died there from his injuries.

So Karen filed this action. She filed the complaint both individually and on behalf of Randall's estate. The complaint asserted civil rights violations under 42 U.S.C. § 1983, wrongful death and survival claims under Louisiana law, and other state-law claims against various defendants whom she alleges were responsible for her son's death. It alleged that Randall was survived by his wife, Kelsey Rice Abraugh, along with his biological parents and siblings.

Karen later amended her complaint to "substitute Plaintiff with individual heirs" by "adding Kelsey Rice Abraugh (Randall Abraugh's surviving spouse), and [M.A.] (Randall Abraugh's minor child)." She subsequently amended the complaint again to allow M.A. to appear through Reashelle Morrow, her mother and natural tutor.

The district court granted Defendants' motions to dismiss. It held that Karen lacked Article III standing to bring this suit, on the ground that Louisiana law does not provide her with a right of action to pursue these claims. The district court also found that the later amendments adding Kelsey and M.A. to this action could not cure the initial jurisdictional defect, because Karen was the only plaintiff in the original complaint. Karen timely appealed.

We review a dismissal for lack of Article III standing de novo. *See*, *e.g.*, *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 334 (5th Cir. 2021).

## II.

There are three elements that a plaintiff must prove to establish Article III standing: injury in fact, traceability, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

In addition, courts have occasionally articulated other "standing" requirements that plaintiffs must satisfy under certain conditions, beyond those imposed by Article III. As relevant here, "[s]tanding under the Civil Rights Statutes is guided by 42 U.S.C. § 1988." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004). And § 1988 "provides that state common law is used to fill the gaps in administration of civil rights suits." *Id. See also* 42 U.S.C. § 1988(a).

So "a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." *Pluet*, 355 F.3d at 383.

Under Louisiana law, the right to pursue a survival or wrongful death action is available to four exclusive categories of survivors. Those four classes are as follows:

> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
>
> (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
>
> (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

LA. CIV. CODE arts. 2315.1(A) & 2315.2(A).

These provisions make clear that the existence of a higher class of survivors prevents a person in a lower class from filing suit. *Id.* And that is precisely the problem here: Karen would be allowed to sue under Louisiana law, but for the fact that there are other individuals who enjoy superior status under the governing provisions. Indeed, she concedes as much. She

concedes, as she must, that Randall was survived by his wife, Kelsey, and his daughter, M.A. As the "surviving spouse and child . . . of the deceased," they are the only ones who may bring these survival and wrongful death claims in accordance with Louisiana law. LA. CIV. CODE arts. 2315.1(A)(1) & 2315.2(A)(1). And because they are available to sue, Karen is disabled from suing as a matter of Louisiana law as the "surviving . . . mother of the deceased." *Id.* arts. 2315.1(A)(2) & 2315.2(A)(2).

That much is undisputed. But it led the district court to (incorrectly) conclude that it lacked subject matter jurisdiction because Karen lacked Article III standing to bring this suit. To be sure, the district court did not err in describing her inability to sue under Louisiana law as a defect of "standing." But it is a defect of prudential standing, not Article III standing. And the difference matters here, because Article III standing is the only kind of standing required before a federal district court can exercise subject matter jurisdiction.

## A.

Before we explain why there is subject matter jurisdiction in this case, we should first address why we decline to embrace the jurisdictional theory set forth by Karen.

As Karen points out, at least four paragraphs in both the original and amended complaints mention Kelsey. So Karen theorizes that Kelsey was a plaintiff at the outset of this litigation—and as explained, Kelsey is indisputably entitled to sue under Louisiana law.

But Kelsey was not listed in the caption of the original complaint. Rule 10(a) of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties." FED. R. CIV. P. 10(a). And even if we were to accept that omission as a named party in the caption of the complaint is not necessarily "determinative as to the identity of the parties

to the action," Charles Alan Wright & Arthur R. Miller, 5A FEDERAL PRACTICE AND PROCEDURE § 1321 (4th ed. 2018), courts at least give the caption "considerable weight when determining who the plaintiffs to a suit are since plaintiffs draft complaints." *Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006). We see no basis for looking past the caption here.

## B.

The better jurisdictional argument for Karen is that the district court wrongly conflated two distinct concepts of standing—and that what really matters here is that she has standing under Article III, even if she cannot sue as a matter of Louisiana law.

The term "standing" is often misused in our legal system. "The 'standing' label is . . . sometimes placed on the real-party-in-interest challenge." *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017). And this has unfortunately led to confusion for attorneys and judges. *See id.*

In fact, our unpublished opinions are divided over the very question presented in this appeal: Does lack of "standing" to bring a § 1983 claim under a state's wrongful death or survival statute implicate subject matter jurisdiction? *Compare King ex rel. Chaney v. Texas Med. Bd.*, 576 F. App'x. 353, 354 (5th Cir. 2014) (per curiam) (yes), *with Prudhomme on behalf of Reed v. Russell*, 802 F. App'x 817, 821 (5th Cir. 2020) (per curiam) (no).

Our decisions should not be so divided, however. Because our court has repeatedly affirmed the legal principle that should decide this question: "[S]tanding in federal court is determined *entirely by Article III* and depends in no degree on whether standing exists under state law." *Int'l Primate Prot. League v. Adm'rs of the Tulane Educ. Fund*, 895 F.2d 1056, 1061 (5th Cir. 1990) (emphasis added), *rev'd on other grounds*, 500 U.S. 72, 74, 76–77 (1991). *See Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 519 n.1 (5th Cir. 2014) (same). So the fact that Karen was not the proper plaintiff to bring this action

under Louisiana law does not mean that she lacked Article III standing. *See Norris*, 869 F.3d at 367.

Karen does indeed have Article III standing to bring this suit. She seeks money damages to address the death of her son, which was allegedly caused by Defendants' conduct. So she has sufficiently alleged all three elements required to establish Article III standing at this stage. *See Lujan*, 504 U.S. at 560–61 (Article III standing exists at the pleading stage when a plaintiff plausibly alleges (1) an "injury in fact," (2) that is "fairly traceable to the challenged action of the defendant," and (3) that is "likely . . . redress[able] by a favorable decision") (cleaned up).

Our sister circuits have held that a child has Article III standing to file suit over the wrongful death of a parent. *See, e.g.*, *Jones v. Prince George's Cty.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). We presume that similar logic would govern a suit filed by a parent over the wrongful death of a child. And in any event, Karen has also sufficiently alleged Article III standing in her capacity as the administrator of her son's estate. The estate has suffered an injury that the defendants are allegedly responsible for, and it seeks redress in the form of money damages.

So we do not doubt the subject matter jurisdiction of the district court. Karen has established "[s]tanding of the constitutional variety—the well-known injury, causation, and redressability trifecta." *Norris*, 869 F.3d at 366. And it is that kind of standing that determines subject matter jurisdiction. *Id.*

The defect here, by contrast, is one of prudential standing. And prudential standing does not present a jurisdictional question, but "a merits question: who, according to the governing substantive law, is entitled to enforce the right?" *Id.* at 367 (quotations omitted). As the Federal Rules of Civil Procedure make clear, "an action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1). And a violation of

this rule is a failure of "prudential" standing. *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) (citing Fed. R. Civ. P. 17(a)). "[N]ot one [of our precedents] holds that the inquiry is jurisdictional." *Id.* It goes only to the validity of the cause of action. And "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (quotations omitted).

Accordingly, the district court erred in concluding that it lacked subject matter jurisdiction just because Karen was not the proper party to bring this case under Louisiana law.

## C.

There is one final issue that we must address. The district court erred because it improperly conflated Article III standing with prudential standing. But Karen has never made this argument. So that raises the question of forfeiture. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

It is our constitutional duty, of course, to decline subject matter jurisdiction where it does not exist—and that is so whether the parties challenge Article III standing or not. *See, e.g., Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (noting courts' "obligation to assure ourselves of litigants' standing under Article III") (quotations omitted).

But the opposite is not true. We do not have a constitutional duty to *accept* subject matter jurisdiction based on theories not actually presented by the parties. Rather, "[a]rguments in favor of [Article III] standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019). And Plaintiffs like Karen bear the burden of establishing Article III standing. *See Lujan*, 504 U.S. at 560–61. So we must address the issue of forfeiture.

We find no forfeiture here.  Karen has repeatedly asserted that the district court erred in dismissing this action for lack of standing.  To support her standing argument, she invoked our decision in *Nobre v. Louisiana Department of Public Safety*, 935 F.3d 437 (5th Cir. 2019).

In *Nobre*, the decedent's mother (like Karen) filed § 1983 claims as well as wrongful death and survival claims under Louisiana law.  *See id.* at 438.  After filing the action (and after the limitations period had run), she discovered that her son had two children—which meant that she (like Karen) was "not the proper party" to bring the action under Louisiana law.  *See id.* at 439.  In response, she substituted the children's natural tutors as plaintiffs in an amended complaint.  Our court allowed the amendment and concluded that the amendment "would be allowed to relate back under Louisiana law, and is also allowed to relate back under Rule 15(c)(1)."  *Id.* at 444.

So under *Nobre*, Plaintiffs like Karen may indeed amend their complaints to include the proper plaintiffs under state wrongful death and survival statutes.

But here's the problem:  *Nobre* did not address standing at all—let alone distinguish between Article III standing and prudential standing.  At first blush, then, it might seem odd for Karen to invoke a precedent to support Article III standing that nowhere even mentions, let alone analyzes, Article III standing.

That said, it seems obvious that Karen's argument is that this case presents no Article III standing defect for the same reason that no Article III standing defect was identified in *Nobre*.  To be sure, a precedent that does not discuss standing or jurisdiction cannot be invoked as a precedent on standing or jurisdiction.  *See, e.g.*, *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the

proposition that no defect existed."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("drive-by jurisdictional rulings . . . have no precedential effect"). But the argument here is not that *Nobre* is binding precedent on standing—but that *citing* our decision in *Nobre* is sufficient to avoid forfeiture. Karen has sufficiently preserved her standing argument by arguing that there is standing here for the same reason there's standing in *Nobre*.

## III.

Two issues remain, both of which the district court should address in the first instance.

First is the matter of timeliness. Various Defendants contend that Kelsey and M.A.'s claims are time-barred and do not relate back to the original complaint in this action pursuant to either Rule 15 or Rule 17. *See Nobre*, 935 F.3d at 441–42 (relation back under Rule 15); *Ratner v. Sioux Nat. Gas Corp.*, 770 F.2d 512, 520 (5th Cir. 1985) (relation back under Rule 17(a)); *Magallon v. Livingston*, 453 F.3d 268, 273 (5th Cir. 2006) (addressing standard for "ratification, joinder, or substitution" under Rule 17(a)); *Wieburg v. GTE Sw., Inc.*, 272 F.3d 302, 308–09 (5th Cir. 2001) (same).

Second is the matter of sovereign immunity. Two Defendants—the Louisiana Office of Risk Management and the Board of Supervisors of Louisiana State University Agricultural and Mechanical College—contend that they are entitled to sovereign immunity.

The district court did not have an opportunity to address these issues in the first instance due to its jurisdictional holding. We decline to address these issues for the first time on appeal, and instead leave them for the district court to resolve on remand.

No. 21-30205

\* \* \*

We reverse and remand for further proceedings.